HARDY, Judge.
This is an expropriation suit and plaintiff appeals from judgment fixing the value of the property in the amount of $37,500, being $10,000 in excess of the amount originally deposited by plaintiff. Defendants have answered the appeal, praying for an increase in the valuation of the property to the sum of $44,209.58.
The property expropriated was located on the corner of an intersection of Christian and Taylor Streets in the City of Shreveport, both being paved streets, and the lot, rectangular in shape, measured 130 feet on Taylor Street by 40 feet on Christian Street. The improvements on the land consisted of a two-story brick building with a two-story frame extension or addition thereto, the lower floor of said building being operated as a store and the upper floor being divided into two apartments, and, to the rear of said building, three Negro tenant houses of frame construction. The lower floor of the brick building and frame addition was used as a grocery, meat market and package liquor store, operated by one of the defendants, Anthony J. Cordaro, under a formal lease agreement from his mother, Mrs. Lena P. (John A.) Cordaro, owner of an undivided one-half interest of said property and usufruc-tuary of the remaining one-half interest.. A letter written by Mr. Lawrence L. May,, an experienced realtor of Shreveport and one of plaintiff’s appraisers, introduced in evidence on behalf of defendants, referred; to the store building as being “splendidly constructed” and to the tenant houses as being in “excellent condition.”
Counsel for plaintiff have specified asserted errors of the trial court as being the failure to base the judgment on testimony which did not conform with that presented by either plaintiff or defendants accepting defendant’s unsupported testimony as to the consideration of the lease agreement in arriving at the economic rent, a consequent rejection of asserted positive proof of substantially lower economic rent on the part of the plaintiff’s expert, and, finally, the acceptance of the replacement cost of improvements without showing that such costs represented the market value: thereof.
The above specifications of error are primarily based upon counsel’s contention that the trial judge did not clearly express his-acceptance of either the income or the replacement value approach. Counsel asserts, that the income approach was regarded as the most reliable by the expert witnesses called by the State, and the replacement value was used as being the most reliable method of valuation fixed by witnesses for defendant. While it is true, from consideration of the reasons assigned, that the trial judge carefully considered both valuation approaches, we are quite willing to accept counsel’s insistence upon the economic income basis which has been often recognized and applied by our jurisprudence. State v. Sauls, 234 La. 241, 99 So.2d 97; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853; Louisiana Highway Commission v. Paciera, 205 La. 784, 18 So. *857 2d 193. Parenthetically, it should be pointed out that what has been called “the preferable rule” in the determination of valuation of expropriated property, based upon comparable sales, is not available in the instant case, for the reason that, con--cededly, there have been no such comparable sales in the vicinity of the property here involved. Nor do we think, under the facts of this case, that the replacement cost approach is justified.
In development of the income approach plaintiff’s expert witnesses, Mr. Lawrence L. May arid Mr. O. L. Jordan, arrived at rental values of $110 and $125 per month respectively. In this connection we think it essential to refer to the terms and conditions of the lease agreement, dated April 2, 1956, in effect at the time of the taking of the property. This agreement, having a term of ten years, providing for renewal options for two additional terms of five years each, in addition to the cash consideration of $110 per month, embraced “and other considerations (privilege of drawing groceries, meats, etc. — as lessor needs).” The lessee further bound himself to pay all gas, water and sewerage bills for the second-story apartments, and all water and sewerage bills for the rental units in the rear of the store. From our examination of the record it does not appear that the plaintiff’s experts gave proper consideration and recognition to what we regard as the substantial value of these considerations in addition to the actual money rental. The position taken by Mr. May on this point was set forth in the letter above referred to under date of September 10, 1958, directed to the right-of-way engineer of the Department of Highways for the State of Louisiana. In this communication Mr. May explained his attitude with respect to Mrs. Cordaro’s right to supply her needs for groceries, meats, etc., from the stock of lessee’s store, as follows:
“Since this is a transaction between a mother and her son and such a clause is so unusual as to rarely be found in a commercial transaction, and, furthermore, because the amount of groceries of which Mrs. Cordaro might avail herself under this clause could not be computed, I choose to look upon them as being a gift from a son to his mother rather than rent. Furthermore, Mr. Cordaro bought out his mother’s interest in the store, it having been formerly operated by them as a partnership and this gift of groceries might also be considered as a part of that transaction.’’ (Emphasis supplied.)
The above expressed reasons for Mr. May’s - conclusions are based purely upon his own speculative interpretation of the transaction and not upon the basis of any fact resulting from his independent investigation. On trial of the case the lessee, Anthony J. Cordaro, testified that a conservative figure for the additional items of consideration above noted amounted to a sum of some $15 per month for utility bills, and a value of $40 to $50 per month for the food and other supplies furnished Mrs. Cordaro, the lessor, under the terms of the lease agreement.
Counsel for plaintiff strenuously objects to the validity of the above testimony by Mr. Cordaro, but he does not specify any facts which would justify his complaint. The testimony was admitted without objection, the witness was not cross-examined on these particular points, and no effort was made to rebut his testimony. We can find not the slightest degree of substantiation for any suspicion as to the validity of the testimony, nor as to the good faith of the agreement under which these items were considered as valid and moving considerations. On the very face of the matter we completely accord with the observation of the witness that the amounts he fixed were based upon conservative estimates.
In arriving at his conclusion as to a fair valuation of the property upon the basis of the income approach method, the trial judge properly regarded the above discussed item? as constituting elements of *858 rental value, and, using the amount of $175 as the actual monthly consideration for the lease, upon the basis of Mr. May’s own methods of calculation, he reached the round sum of $37,500.
We are unable to find any error in either the method used or the conclusion reached by the trial judge, and, on the contrary, find ourselves in complete accord therewith.
In support of their answer to the appeal defendants contend that the valuation of $37,500 should be substantially increased, either upon the basis of income or cost replacement. While it does appear from some of the testimony that the rental figure of $175 per month might be considered somewhat low, we do not find that the record supports an increase in this figure. If, as we believe and have above asserted, the lease agreement represents a binding good faith transaction, notwithstanding the relationship of the parties, from one point of •view, it follows that it must be so regarded from another.
For the reasons assigned the judgment appealed from is affirmed.